### STATE, ex rel. OHIO POWER COMPANY, Plaintiff, v. UTILITY WORKERS UNION OF AMERICA (CIO), Local 138 et, Defendants.

Common Pleas Court, Muskingum County.

No. 37913. Decided August 30, 1951.

V. E. Johnson, Zanesville, for plaintiff.
Ralph G. Marshall, Zanesville, for defendants.

### JOURNAL ENTRY OF FINDING AND JUDGMENT

By CROSSLAND, J.

The Charges of Contempt and the evidence relating thereto as contained in the evidence herein from July 25, 26 and 27, 1951, and upon the additional evidence received August 28, 1951, specifically involve the question and issue of disobedience of a lawful order of this court, to-wit, the Restraining Order or Temporary Injunction of July 22, 1951, reaffirmed July 31, 1951, and amended and supplemented August 8, 1951.

At this time the court will not reconsider its willingness in its Memorandum Opinion and Journal Entry of July 31, 1951, not to proceed further against individual members of the Union which the July evidence, incorporated as part of the record of August 28, 1951, proved acted contrary to its order of July 22, 1951, for the reason that it is not clearly and convincingly established that any such named and identified individual defendant was a person identified as separately involved individually in any specific subsequent violation. The court is not disposed to assume that individual defendants not originally cited for contempt immediately following the July hearings have since actively participated individually in contempt of the court's order so as to now merit consideration of punishment not formerly contemplated, in the absence of specific proof of subsequent individual violations established by clear and convincing evidence.

However, the foregoing is not to say that individual defendants are thereby absolved from liability as members of the Union for that organization's accountability under the Temporary Injunction as amended and supplemented. On the contrary, the court does take into account, in connection with subsequent evidence, the fact that those guilty of early violations were and are members and agents of the Union and that the Union as such should not and can not evade or escape responsibility for their acts and conduct as alluded to in the said Memorandum Opinion and Journal Entry of July 31, 1951.

The court considers and determines that when member acts of proven disobedience such as occurred in ·

1. admittedly following the occupants of a visiting automobile from Duncan Falls to Zanesville, over Zanesville streets and three miles west of Zanesville, driving alongside long enough for words to ensue, cutting around and returning past from west of Zanesville, with ample opportunity for further words, with which admitted facts and circumstances the testimony of the Newark witnesses reasonably accords, while that of the Union members is not only ricidulously incredible but patently false;

2. admittedly following and allegedly driving across the path of a coal truck whose driver obviously was badly scared by what was done and said when accosted at the Ohio Power Company plant entrance and upon the premises of the Bruns Coal Company;

3. admittedly driving across the main plant entrance so as to impede an incoming coal truck, explained as merely turning around, but with no other valid reason for being there so as to be required to turn around in the entrance to company premises, or of any occasion to do so when plenty of public highway in three directions was a few feet west thereof;

4. admittedly walking in past a full complement of four pickets for unwarranted access to railroad right of way at a time and place where railroad employes were engaged in serving their employer's business with the relator, unsatisfactorily explained as part of an uninvited, self-assumed investigation of an alleged prior day's stoning incident; the court repeats, when such acts and conduct occurred, among others, several days after the making, issuance, service and private and public communication of the court's order and, in fact, during the very progress of the court's first hearings, on the part of members, some of whom were then filling and exercising positions of Union responsibility in the course and conduct of the strike, plus an evident willingness, if not desire, of the chosen and accepted leadership to accept the fruits of such efforts as well as to disavow in behalf of such members any influence or implication of their disobedience to the existing Order, then it is quite clear, positive and convincing to the court that the Union thereby ratified and approved, if it had not already previously authorized, the acts, deeds and conduct of such members as its own, in addition to the Union's initial responsibility to the court to undertake to prevent and not to permit disobedience of the Restraining Order by any of the membership.

Proceeding to the evidence adduced at Tuesday's hearing, it is uncontradicted that a number of acts repugnant and

contrary to this court's Temporary Injunction occurred during the night of August 6, and early morning of August 7, 1951, in the immediate or proximate vicinity of Union pickets, none of whom testified and whose names and identity were not disclosed by any Union officer or principal agent nor acknowledged or admitted by any Union member.

Astoundingly, there was not a single syllable of testimony offered by any Union officer or member relative to the name or knowledge of a single Union picket for the three days and nights of August 5, 6 and 7, regarding the events and occurrences charged and complained of by plaintiff.

It is an inescapable inference from complete unwillingness of any picket or Union or picket officer to testify as to the occurrences and events which precipitated the ordered elimination of all picketing that they could not testify truthfully without implicating their Union or its members and perhaps themselves.

In any event, it is utterly incomprehensible and wholly unbelieveable to the court that not one of approximately a half hundred pickets presumably on duty at various points surrounding the well lighted company premises during the hours of that particular night, according to other night picketing schedules, saw or knew nothing whatever of time consuming sabotage in their immediate vicinity.

The court can only conclude, not only from clear, positive and convincing evidence, but beyond a reasonable doubt, that such related and coordinated activities were planned and executed either by or for and in behalf of the Union, whose members and agents in substantial number admittedly were present nearby throughout the night.

Would these members of the Union have stood blindly and deafly in dumb silence if uninvited or unacceptable persons were "planting" evidence for use against them?

Fear-inspiring communication severances, property damaging transportation hindrances, body endangering rail track tampering, were known to and permitted by Union pickets as surely as night follows day, regardless of the identity of the perpetrators. How could anyone with an iota of intelligence conclude otherwise?

Piecing together the early "thrusts" days following issuance of the original restraining order, Union unwillingness to disbelieve or repudiate the incredibly preposterous explanations of established and evident violations, the well coordinated and calculated conduct of the night of August 6th and 7th, with total absence of any explanation whatever by Union officers or members, and the wilfull persistence in attempting

to maintain picketing after it was ordered terminated, and there is an unmistakable pattern of consistent and concerted disobedience by the Union of the court's Temporary Restraining Order and Injunction, regardless of the number of participating or contributing members.

The complained of occurrences of August 23rd and 24th, as with the cut telephone lines into the three homes, all away from the company plant premises, while understandingly attributable in logical aspect to the above pattern of Union activities, did not occur within the proven presence or immediate nearness of Union members, nor is there other evidence directly, circumstantially or inferentially sufficient to arrive at a finding adverse to the Union by clear and convincing evidence, relative thereto.

As a matter of tempering its judgment, in finding The Utility Workers Union of America (CIO), Local 138, guilty as aforesaid, in contempt of this court's Temporary Restraining Order and Injunction herein, as charged, the court is disposed to treat the various matters and specifications up to August 8, 1951, as a single aggregate violation by the Union, excepting therefrom the continued picketing in its behalf since August 8, 1951, which is deemed a further and additional deliberately defiant disobedience of the August 8th amendment, an integral part of the law of this case since said date, in that all picketing and not merely all Union picketing was then and thereby ordered eliminated.

It is therefore ordered and adjudged that said The Utility Workers Union of America (CIO), Local 138, pay a fine of Five Hundred Dollars ($500.00) and the costs of this prosecution, taxed at $25.50, for its said contempt preceding August 8, 1951, and a fine of Five Hundred Dollars ($500.00) for its said contempt thereafter, payment of said latter fine being suspended conditional upon immediate, full and continuous compliance with said no picketing provision of said Injunction as amended and supplemented August 8, 1951, and also expressly conditioned upon an immediate apology to the court at this time in open court for said latter contempt, to be offered in behalf of the Union by Joseph Hartman, Robert Baker, W. A. Comer, A. B. Ferguson and Paul Lingo, together with their personal assurances of the fullfillment of the first named condition.

Payment of each said judgment of Five Hundred Dollars ($500.00) and said costs of $25.50 is now due unless effective suspension of said one fine now begins and is of record in this case. Unless payment of said total sum of $1,025.50 is received by the Clerk of this Court this date, subject only to

the credit of $500.00 conditioned expressly as aforesaid, the relator herein, plaintiff in the original action, The Ohio Power Company, is hereby ordered to withhold from dues deductions otherwise payable to or for said Union said sum of $1025.50 or so much thereof as remains unsatisfied or unpaid by the Union, out of the first monies so owing the Union and otherwise payable to it by said plaintiff.

Bond for appeal to stay execution fixed at the sum of $2000.00.

Exceptions hereto granted to the said Union.